[Cite as *Woods v. Tye*, 2019-Ohio-4863.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Gary F. Woods, et al.,                    :

    Plaintiffs-Appellees,              :

                                       No. 18AP-278

v.                                        :       (C.P.C. No. 15CV-6197)

David S. Tye, et al.,                     :       (REGULAR CALENDAR)

    Defendants-Appellants.             :

---

D E C I S I O N

Rendered on November 26, 2019

---

**On brief:** *Law Offices of James P. Connors,* and *James P. Connors*, for appellees. **Argued:** *James P. Connors.*

**On brief:** *Zacks Law Group, LLC*, *Benjamin S. Zacks,* and *Susan Gellman,* for appellants Benjamin Newsome and Newsome and Associates Construction Concepts, LLC. **Argued:** *Susan Gellman.*

---

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendants-appellants, Benjamin Newsome ("Newsome") and Newsome and Associates Construction Concepts, LLC ("Newsome and Associates" or "appellants" collectively), filed a notice of appeal from three judgment entries, denying their motion for issuance of a nunc pro tunc judgment entry, denying their motion to supplement the record or for a new trial, and overruling their objections to the magistrate's decision, entering judgment in favor of plaintiffs-appellees, Gary F. Woods and Nancy S. Woods. For the following reasons we affirm the trial court's judgments.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In August 2013, Gary Woods noticed a for rent sign at 1382 South Fourth Street in Columbus, Ohio. In 2007, appellees had operated a Halloween attraction

business. They had placed in storage items they used in the business. The items included props for the Halloween attraction business, pneumatic equipment and sound equipment, along with some household items.

{¶ 3} Appellees were looking to move these items to a bigger storage place. Mr. Woods called the telephone number he had seen on the for rent sign and eventually spoke with defendant, David S. Tye.

{¶ 4} On September 4, 2013, appellees met with Tye who told Mr. Woods that his wife owned the building. The Woods agreed to rent the building. Mr. Woods and Tye signed a handwritten lease. The lease identifies the owner as Tye and Gary Woods as renter for a period of three years, for $625 per month beginning September 15, 2013. A second handwritten lease was signed by the parties and "D&S Management" on September 4, 2013, acknowledging receipt of $665 and $1,230 for the deposit and rent for October 2013. The lease was for three years beginning November 1, 2013 through November 1, 2016. Mr. Woods testified he prepaid the rent for the first year in exchange for a discounted amount of $6,583. Appellees moved items into the building.

{¶ 5} Tye, through the company RED Holdings, LLC,[1] had entered into a land contract and the Trula Newsome Trust ("the Trust") was the holder of a note and the mortgage on the building. Tye failed to make payments and a foreclosure action occurred. The Trust took title to the building on October 10, 2013, through a sheriff's sale. Newsome and Associates acquired the building through a quit claim deed on November 5, 2013.

{¶ 6} On April 5, 2014, Mr. Woods discovered that the locks had been changed. He called the phone number on a sign at the property and spoke to Newsome. Woods testified that he explained to Newsome that he had entered into a lease with Tye and he had property stored in the building. Newsome explained that Tye had failed to make payments under the contract to purchase the building and Tye also had property stored in the building. Newsome told Mr. Woods he believed the property inside the building belonged to him, but Mr. Woods disagreed. Mr. Woods testified that Newsome told him to be patient because his lawyer would be resolving the matter.

---

[1] Tye testified that RED Holdings, LLC was his former wife's company. However, the record demonstrates that his former wife, Rosaland M. Gatewood-Tye, relinquished all her interest in RED Holdings, LLC at the time of the divorce in 2011. RED Holdings, LLC was dissolved on September 13, 2013.

{¶ 7}   Mr. Woods testified he spoke to Newsome a second time a few days later and told him he had consulted his lawyer and he had the right to obtain his property from the building.  Newsome told Mr. Woods that he wanted to be sure the property was returned to the correct owner and it would take time for the lawyers to resolve these issues, probably the end of November or December.  Mr. Woods testified that Newsome assured him that his property was secure and that when the lawyers finished, "I'll let you know and you can come and get your property."  (Aug. 23, 2017 Tr. at 131.)  Mr. Woods believed he had an agreement with Newsome.

{¶ 8}   On May 5, 2014, Newsome sent a text to Mr. Woods and asked for a copy of the lease.  Mr. Woods testified that the next day he emailed a copy to Newsome, although Newsome testified he never received a copy of the lease.  Mr. Woods testified that on October 13, 2014, he noticed a for-sale sign in the window of the building and sent Newsome a text message asking him when he could remove his property.  On December 17, 2014, the Woods discovered that their property was no longer in the building.  Newsome had sold the Woods' property at an auction prior to selling the building to a third party on October 17, 2014.  Mr. Woods telephoned Newsome several times, but he was unable to speak to him.

{¶ 9}   On July 22, 2015, appellees filed a complaint against Tye, D&S Lawn Management, Rosaland M. Gatewood-Tye, Newsome, Newsome and Associates, Trula Newsome, and the Trust alleging breach of contract, negligence/bailment, negligent misrepresentation/fraud, and civil conspiracy.  On May 6, 2016, the trial court granted a default judgment in favor of appellees against Tye.  On August 26, 2016, the trial court entered judgment against Tye in the amount of $53,346.60, including compensatory damages in the amount of $43,918.85 and attorney fees and costs in the amount of $9,427.75 for a total of $53,346.60.  (July 21, 2016 Mag.'s Decision; Aug. 26, 2016 Jgmt. Entry.)

{¶ 10} On November 18, 2016, Newsome and Newsome and Associates filed a motion for summary judgment.  The trial court granted their motion, extinguishing appellees' civil conspiracy claim, but denying summary judgment on the remaining claims. (Jan. 19, 2017 Decision & Entry.)  The trial court dismissed the claims against D&S Lawn Management on January 12, 2017 for lack of prosecution.

{¶ 11} On August 18, 2017, the parties filed a joint motion for continuance, but the trial court denied the motion. The matter was tried before a magistrate on August 23, 2017. On September 29, 2017, the magistrate issued a decision finding for appellees on the issue of breach of a contract bailment by Newsome and Newsome and Associates, but the magistrate denied appellees relief on their claims for negligent misrepresentation and fraud. The magistrate found appellees were entitled to $36,105.85 in damages from Newsome and Newsome and Associates and the magistrate entered judgment in favor of Trula Newsome and the Trust. Newsome and Newsome and Associates filed objections to the magistrate's decision.

{¶ 12} Tye filed a motion for relief from judgment on August 20, 2017. The magistrate denied the motion on December 4, 2017 and the trial court adopted that decision in an entry dated January 8, 2018.

{¶ 13} On January 9, 2018, the trial court denied the objections to the magistrate's decision and adopted the magistrate's September 29, 2017 decision. On January 30, 2018, the trial court filed an entry dismissing the claims against Rosaland M. Gatewood-Tye and entered judgment for appellees against Newsome and Newsome and Associates, jointly and severally, for damages in the amount of $36,105.85.

{¶ 14} On February 19, 2018, Newsome and Newsome and Associates filed a motion to supplement the record with newly found evidence or for a new trial. The trial court denied the motion on March 27, 2018.

## II. ASSIGNMENTS OF ERROR

{¶ 15} Newsome and Newsome and Associates appeal and assign the following two assignments of error for our review:

> [1.] The Trial Court's Judgment Is Not Amenable to Meaningful Review, Because the Trial Court Never Stated Its Theory of Legal Liability, What Duty Applied, or How the Facts Established a Violation of Any Duty.
>
> [2.] Even If Liability Had Been Properly Determined, the Trial Court's Calculation of Damages Was Incorrect, Because (A) the Trial Court Denied Procedural Motions that Would Have Allowed a Complete Record, (B) the Trial Court Accepted Unsupported Valuations, and (C) the Trial Court Gave an Award for Damages for Which the Appellees Had Already Received a Judgment Representing Complete Recovery for the Alleged Losses.

## III.  ANALYSIS

{¶ 16} In the first assignment of error, appellants argue that the trial court's judgment is not amenable to meaningful review because the trial court never stated its legal theory or basis for determining liability, nor did it state what duty applied or how the facts established a violation of any legal duty.  Appellants argue that the trial court decision is unclear whether the court found a contract or a bailment, and if a bailment, which type of bailment or the details of the agreement reached between the  parties as bailor and bailee and thus, it is impossible to determine whether there was breach and if the determination is supportable by law.  Appellants further argue that the trial court's factual findings and assessment of damages are based on an incomplete record because the trial court denied the motion for continuance and the motion to supplement the record.  Newsome was unable to travel to Texas to gather his records before the trial and was not able to supplement the record after the trial.

{¶ 17} Generally, a trial court's " 'findings and conclusions must articulate an adequate basis upon which a party can mount a challenge to, and the appellate court can make a determination as to the propriety of, resolved disputed issues of fact and the trial court's application of the law.' " *Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.*, 10th Dist. No. 12AP-647, 2013-Ohio-3890, ¶ 35, quoting *Hahn v. Johnston*, 4th Dist. No. 06CA16, 2007-Ohio-2800, ¶ 2.  A trial court must make its findings in order for an appellate court to conduct a meaningful review.  *Id.* at ¶ 35, citing *Walker v. Doup*, 36 Ohio St.3d 229, 230-31 (1988).

{¶ 18} In this case, appellants agree that the judgment is based on the conclusion that there was a bailment contract between the Woods and Newsome.  However, appellants argue that the trial court's analysis of the contract theory and the bailment were cursory and conclusory and not adequate to form a reviewable judgment.

{¶ 19} The magistrate specifically found that Mr. and Mrs. Woods were credible witnesses.  Further, the magistrate found that these facts supported a conclusion that the parties entered into an oral agreement with Newsome and Newsome and Associates.  " 'A contract is generally defined as a promise, or a set of promises, actionable upon breach.' " *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976).  To demonstrate a claim of

breach of contract, a plaintiff must prove (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages or loss to the plaintiff.  *Thyssen Krupp Elevator Corp. v. Constr. Plus, Inc.*, 10th Dist. No. 09AP-788, 2010-Ohio-1649, ¶ 13, citing *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, ¶ 18 (10th Dist.).  The purpose of contract construction is to realize and give effect to the parties' intent. *Skivolovki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus.  An oral agreement is enforceable when the terms of the agreement are sufficiently particular. The terms of an oral contract may be determined from " 'words, deeds, acts, and silence of the parties.' "  *Kostelnik* at ¶ 15, quoting *Rutledge v. Hoffman*, 81 Ohio App. 85 (12th Dist.1947).

{¶ 20} A mutual benefit bailment is a "bailment arising by operation of law or express contract, which exists where personal property is delivered by the owner to another person.  Both parties benefit in the exchange." *Mills v. Liberty Moving & Storage, Inc.*, 29 Ohio App.3d 90 (10th Dist.1985).  In order to establish a prima facie case in an action, a bailor must demonstrate (1) the contract of bailment, (2) delivery of the bailed property to the bailee, and (3) failure of the bailee to redeliver the bailed property undamaged at the termination of the bailment.  *David v. Lose*, 7 Ohio St.2d 97 (1966), paragraph one of the syllabus.

{¶ 21} The magistrate found that Newsome assured and agreed that appellees' property was safe and secure and that Mr. Woods would be contacted in order to remove the property later in the year.  Appellees performed in accordance with the agreement by refraining from pursuing a legal remedy and waiting for Newsome to contact them to remove the property.  Forbearance is sufficient consideration to support the agreement. *Coffman v. Ohio State Adult Parole Bd.*, 10th Dist. No. 12AP-267,  2013-Ohio-109, ¶ 9, citing *Motorists Mutual Ins. Co. v. Columbus Finance, Inc.*, 168 Ohio App.3d 691, 2006-Ohio-5090, ¶ 8 (10th Dist.).  Appellants breached the agreement by disposing of the property and failing to return it.  Mr. Woods testified to these facts.

{¶ 22} Appellants in their assignment of error contend that the trial court's decision is not amenable to meaningful review because the trial court did not clearly state its theory of liability, what duty applied, or how the facts established a violation of any legal duty. Appellants do not contend that that the trial court erred in its determinations, but argue

the decision is not amenable to meaningful review. We do not agree with appellants because we are able to discern that the trial court found appellants violated a contract of bailment based on the supporting evidence. Appellants' first assignment of error is overruled.

{¶ 23} In their second assignment of error, appellants contend that the trial court erred in determining damages because (1) the trial court denied procedural motions that would have permitted a complete record, (2) the trial court accepted unsupported valuations of the property, and (3) the trial court awarded damages for which the appellees had already received a judgment representing complete recovery for the loss.

{¶ 24} Appellants argue that the trial court's denial of the motion for continuance and denial of the motion to supplement the record or for a new trial, prevented the trial court from basing its decision on all of the facts. Appellants acknowledge that it is within a trial court's discretion to deny a motion for continuance.

{¶ 25} The appellants moved for continuance arguing it was necessary because counsel for Newsome and Newsome and Associates and counsel for Tye were new to the case and needed additional time to prepare. And they sought more time for mediation because Tye had not previously been involved in the mediations.

{¶ 26} The motion for continuance was filed on Friday, August 18, 2017 and the trial was scheduled for August 23, 2017. The trial court denied the motion on Monday, August 21, 2017. The trial court denied the "last minute" motion finding that the case had been pending since July 2015 and the case schedule had been "generously amended." (Aug. 21, 2017 Entry.) Two attempts at mediation had already occurred. The trial court stated that the record established that counsel and the parties had more than sufficient time to prepare for trial and to mediate.

{¶ 27} The decision to grant or deny a continuance is within the sound discretion of the trial court. *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). "Although an abuse of discretion is typically defined as an unreasonable, arbitrary, or unconscionable decision, we note that no court has the authority, within its discretion, to commit an error of law." (Citations omitted.) *State v. Chandler*, 10th Dist. No. 13AP-452, 2013-Ohio-4671, ¶ 8; *see also JPMorgan Chase Bank, N.A. v. Liggins*, 10th Dist. No. 15AP-242, 2016-Ohio-3528, ¶ 18.

{¶ 28} In *Unger*, at 67-68, the court discussed factors to consider in granting or denying a motion for continuance:

> In evaluating a motion for a continuance, a court should note, *inter alia*: [1] the length of the delay requested; [2] whether other continuances have been requested and received; [3] the inconvenience to litigants, witnesses, opposing counsel and the court; [4] whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; [5] whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and [6] other relevant factors, depending on the unique facts of each case.

{¶ 29} In the reviewing a trial court's decision on a motion for continuance, we " 'apply a balancing test, thereby weighing the trial court's interest in controlling its own docket, including the efficient dispensation of justice, versus the potential prejudice to the moving party.' " *Foley v. Foley*, 10th Dist. No. 05AP-242, 2006-Ohio-946, ¶ 16, quoting *Fiocca v. Fiocca*, 10th Dist. No. 04AP-962, 2005-Ohio-2199, citing *Unger* at 67. Applying this balancing test to reviewing the trial court's decision, we consider the factors discussed in *Unger*.

{¶ 30} We note that the request did not specifically include a certain amount of time. Appellants argue that the denial of the motion for a continuance "forced the parties to go to trial without any apparent preparation." (Appellants' Brief at 34.) However, the record reveals that the case was filed on July 22, 2015 and thus, had been pending for over two years and the continuance was requested at the last minute. The trial date had been continued twice to allow for mediations that were unsuccessful in resolving the case and the case schedule was generously amended as the trial court noted. Considering the third factor, given that the continuance request was a joint request, it seems it would not have inconvenienced the parties. The trial court considered the request dilatory, given that it was filed just days before trial, asked for mediation which had already occurred twice and was unsuccessful, and the trial court noted that the case had been pending for over two years.

{¶ 31} In his brief, Newsome argues that he needed time to return to Texas to gather documents, however, again the case had been pending for over two years. The fact that Newsome did not return to Texas during those two years to gather documents necessary for trial does factor into the balancing test that Newsome contributed to the circumstance

which gave rise to the request for a continuance.  We have carefully examined the record in this case and considered the factors.  Under these circumstances, we conclude that the trial court did not abuse its discretion in refusing to grant the requested continuance.

{¶ 32}  The second issue raised in appellants' second assignment of error is that the trial court erred in its determination of damages because the trial court accepted unsupported valuations of the property.  Appellants argue that the valuations relied on by the trial court for the items that were sold at the auction were valuations provided by appellees, and appellants argue that the valuations were entirely subjective and unsubstantiated.

{¶ 33}  Appellees submitted a document with a list of 27 categories of items stored at the property, including documentation of the purchase and value of these items.  Mr. Woods testified that the value of the property was $36,105.85, and Mrs. Woods testified that the testimony and exhibits submitted by Mr. Woods were true and accurate and the value of the items may even be higher than the value reflected on the exhibits.  Appellants provided no rebutting evidence of the value of the property, but testified that Newsome sold the property at an advertised public auction and received $3,600 in proceeds.  In the motion to supplement the record or for a new trial, appellants attempted to supplement the record with the paperwork from the auction that Newsome had recently found.  Newsome argues the documents were in storage in Texas but he had been out of the country for nearly one year and then relocated to Florida.

{¶ 34}  In cases involving a bailment, damages for items lost or destroyed are measured by the fair market value of the items at the time of the loss.  *Maloney v. Gen. Tire Sales, Inc.*, 34 Ohio App.2d 177, 184 (10th Dist.1973).  Newsome and Newsome and Associates did not provide any evidence of the value of the property except for Newsome's testimony of the auction proceeds.  The magistrate found the Woods' testimony credible; the trier of fact is free to believe all, part, or none of the witnesses' testimony.  *Whitestone Co. v. Stittsworth*, 10th Dist. No. 06AP-371, 2007-Ohio-233, ¶ 32, citing *State v. Wiley*, 10th Dist. No. 03AP-340, 2004-Ohio-1008, ¶ 48.  Given the lack of evidence offered by appellants, we cannot say that the trial court erred in relying on the Woods' evidence.

{¶ 35}  In the third part of their second assignment of error, appellants contend that the trial court gave an award of damages for which the appellees had already received a

judgment representing complete recovery for the alleged losses. Appellants argue that prior to the judgment for $36,105.85 against Newsome and Newsome and Associates, the trial court entered a default judgment for appellees for $53,346.60 against Tye. Appellants contend the two separate judgments in the same case for the same loss invites the possibility of a double recovery.

{¶ 36} Initially, we note that appellants failed to raise this issue before the trial court. "Under Ohio law, 'arguments raised for the first time on appeal are improper.' " (Emphasis omitted.) *Tucker v. Leadership Academy for Math*, 10th Dist. No. 14AP-100, 2014-Ohio-3307, ¶ 20, quoting *Marysville Newspapers, Inc. v. Delaware Gazette Co., Inc.*, 3d Dist. No. 14-06-34, 2007-Ohio-4365, ¶ 23.

{¶ 37} Regardless of the number of entries or that the trial court issued two judgments for the same recovery,[2] even if the trial court erred, appellees may only recover one time. " 'The law in Ohio is well-settled that an injured party is entitled to only one satisfaction for his injuries.' " *Haendiges v. Haendiges*, 82 Ohio App.3d 720, 723 (3d Dist.1992), quoting *Seifert v. Burroughs*, 38 Ohio St.3d 108, 110 (1988). Thus, appellees will not be able to recover damages from two parties for the same loss. Appellants' second assignment of error is overruled.

## IV. CONCLUSION

{¶ 38} For the foregoing reasons, appellants' two assignments of error are overruled and the judgments of the Franklin County Court of Common Pleas is affirmed.

*Judgments affirmed.*

KLATT, P.J., and LUPER SCHUSTER, J., concur.

---

[2] The magistrate's decision does break out the damages against Tye and the compensatory damages eventually awarded by the trial court in adopting the magistrate's decision are that same amount, $53,346.60.